Number 241328 Berkeley County School District v. HUB International Mr. Petillo Good to have you with us May it please the court, Mike Petillo on behalf of Appellant HUB This appeal concerns HUB's motion to compel arbitration pursuant to the terms of the 2002 and 2003 brokerage service agreements with the Berkeley County School District. This case is directly controlled by the Supreme Court's decision in Henry Schein. Henry Schein holds that where you have a valid arbitration clause and that arbitration clause includes a delegation provision there is nothing more for the district court to decide. The court must order the case to arbitration for the arbitrator to resolve any remaining disputes that the parties have about the arbitrability of their dispute. And that's the case here. The district has since conceded that the 2002 and 2003 agreements and their arbitration clauses are valid and binding agreements. And it does not dispute that there also contains a delegation provision. And frankly, that's it. That's the end of the analysis. Under Henry Schein, the district court had no power to do anything but to order the case to arbitration for the arbitrator to address the district's arguments that its claims did not fall within the 2002 and 2003 agreements arbitration provisions. Now the district complains that oh if you accept HUB's position there could be zombie delegation clauses where a hundred years from now someone might say that there's a car crash that relates to the 2002 and 2003 agreements and the district court would have no power to address the arbitrability of that issue. But that's already the law. It's what the Supreme Court held in Henry Schein. Henry Schein established a bright line rule that where there's a delegation clause the arbitrator must resolve any disputes over arbitrability. And that's true even if the judges think that the argument seems frivolous. And if courts start disregarding that bright line rule and deciding arbitrability provisions for themselves, as a district court did here, then delegation clauses would be meaningless. But the district's hypotheticals here, they missed the point anyway. As Henry Schein itself explains, we don't really need to worry about this issue because if defendants come forward and start asserting meritless or frivolous arguments for why claims should be decided in arbitration, the arbitrator has just as much power and just as much ability and is presumed to act just as fairly in analyzing that properly and saying, you know what, you're right, this doesn't fall within the arbitration provision, so we're going to send it back to court. And that's true here. We believe that the arbitrator would side with HUB and say, you know what, the district's claims do bear a significant relationship to the 2002 and 2003 agreements, so this should be arbitrated. But if our arguments are rejected, if the arbitrator finds like the district court did that he doesn't see the relationship, then the arbitrator will so find and send this case right back to court. The only issue here is who must decide whether the district's claims are arbitrable. And under Henry Schein, the answer is that the arbitrator must make that decision. And for that reason, because the district court went ahead and addressed an issue that was reserved to the arbitrators under the terms of the 2002 and 2003 agreements, that's it. Reversal is required in the case the court should order, the district court should remand and order the district court to send this case to arbitration, where the arbitrator will resolve the district's arguments. It can assert its claims there that it doesn't think that the allegations of the complaint relate back to the 2002 and 2003 agreements. And from our perspective, this appeal really is as simple as that. Is there any dispute in front of the district court about whether the AAA rules actually delegate arbitrability issues to the arbitrator? No, there wasn't. I don't think that the district contested that at all. We argued that that was the case under a number of circuits have held that that suffices. And this court's decision in Simply Wireless looked at the JAMS rules. The district court noted that the JAMS rules and the AAA rules are kind of different on that, but I know they didn't bring it up here. I was just curious. Well, whatever the district court said about it, in Simply Wireless, this court actually, when it was looking at the JAMS rules, it looked to other circuits' law on the AAA rules and said for purposes of that they were substantively identical. So we're going to follow what those other circuits have done and say that incorporation of the AAA rules suffices and is intent to arbitrate arbitrability. This court need not actually decide that here because the district doesn't contest that. It says in its brief, you know, we're not going to fight that battle even assuming. So this court could, you know, assume for purposes of this decision that it does reflect an agreement to arbitrate arbitrability. But, you know, the clear weight of circuit authority is in favor of that, and it'd be very hard to reconcile a different ruling with this court's decision in Simply Wireless. I mean, that's not, this is not the issue on appeal, but your last statement might not quite be right, right? Don't the JAMS rules say something like the arbitrator shall decide issues of arbitrability and has the power to do so, and AAA rules, I think, just say he has the power, right? So it's Well, I apologize. Maybe if I got out of my skis there, because that issue's not before the court. A lot of circuits have already found it, but it's, yeah, they're not exactly the same. I'm happy to stand corrected then. Well, if there are no further questions for me, I'd be to reserve my time for rebuttal. Very well. Thank you very much. Mr. Barber? Good morning, your honors. It may please the court, Philip Barber for the appellee on plaintiff, Berkeley County School District. The issue, of course, I think that we would agree, is whether the 2002 and 2003 brokerage service agreements at issue here provide a basis for a motion to compel arbitration. There have really been two arguments that have been asserted in the briefs by appellant. The first one, which is the main one, is essentially if two parties form an agreement at some time here, say 2003, and they agree, and it has a broad arbitration delegation provision, and they agree that it terminates at 2004, have they thereby formed an agreement to arbitrate disputes arising from circumstances and facts occurring in 2006 and later? I believe that's really the issue in a nutshell. Appellant has said that this is controlled by Henry Sheen. I disagree. That case involved an injunctive relief carved out to an arbitration provision. The claimant there brought money damages and injunctive relief claims, said it therefore was not within the scope of it. That was a question that should have gone to an arbitrator. That case did not concern the termination of agreements. There is a Supreme Court case that does, Litton v. National Labor Board. I believe that that case controls this question because it concerns invoking an arbitration agreement after the expiration of the agreement. The first question, the question for a court, right, is was an agreement to arbitrate formed? Was an agreement formed? And your client agrees, your client concedes that an agreement was formed, right? In the very abstract, was there an agreement formed in 2003? Yes. But the question respectfully before the court is, was there an agreement formed to arbitrate claims arising in or after 2006? And the answer to that question is no. Why can a court decide, what does the termination of agreement have to do with whether an agreement was formed? Your Honor, the term as explained in Litton is directly on point of that, quoting from that case, an expired contract has by its own terms released all its parties from the respective contractual obligations except obligations already fixed under the contract but as yet unsatisfied. There are no obligations to arbitrate or do anything else surviving the expiration. There is no mutual assent to be bound to the obligation to arbitrate in 2006 or later. A mutual assent to be bound, manifestation mutual assent to be bound, is the formation of a contract. If you do not So you're saying there's, the contract doesn't apply to this particular dispute? No, your Honor. I'm saying that the contract does not apply to disputes based on, that arise from facts or circumstances, quoting Litton, that occurred after the termination of the agreement. I thought Henry Schein said the question of whether an agreement applies to a dispute or not is for the arbitrator if arbitrability has been delegated. The only question for the court is, was an agreement formed? Correct. And under Litton, there was no agreement formed to arbitrate any disputes in 2006 or later. I do not believe it would be correct to say that because some agreement at some point was formed on something that you have thereby agreed to arbitrate anything in the future. You can agree to terminate a contract. Well, no, you've agreed to arbitrate what you agreed to arbitrate. And that maybe you didn't agree to arbitrate the merits of this, but you agreed to arbitrate whether you agreed to arbitrate the merits, right? You agreed to send to an arbitrator this question of, did we agree to arbitrate the merits? You understand what I'm saying? I do, your Honor, but I disagree that that's applicable here because the issue here is your agreement to arbitrate, including this broad delegation clause, terminated. And you agreed, both parties expressly agreed that it terminated on a date certain. And so now after that date certain, something happens that gives rise to a dispute. There was never an agreement formed to arbitrate that. So now the question is, what's the effect of termination? What is the contract? What are the implications for the contract after it is terminated? And you think that is a question for a court, not a question of contract interpretation that's been delegated to the arbitrator? Absolutely, your Honor. And that's what And what's the authority for that? Litton. Litton is directly on point discussing that, your Honor. Saying that when there's, when you've delegated arbitrability to an arbitrator, the effect of contract expiration is nevertheless a question for the court? The scope of the delegation clause is not an issue because we're dealing with formation, right? We're dealing with formation, whether it's narrow or broad. But you've agreed that you formed an agreement. Yes, your Honor. And under Litton, we have a case directly on point that after the termination of that agreement, if something happens that gives rise to a dispute, you don't have an eternal obligation to arbitrate. You agreed that your obligation to arbitrate, whether it's a broad or narrow delegation clause, the whole thing, it does not survive the termination. That is stated explicitly in Litton. And the only exception, so to speak, to that is, well, if it actually arose under the agreement and you simply waited, which is actually the fact pattern there, you waited until after to try to get out of the arbitration to actually come to court to assert your claim, well, of course, that doesn't work. But if it arose years after you both agreed that you would no longer have a duty to arbitrate disputes, then you never formed an agreement to arbitrate disputes after that point. There's a Supreme Court case that says exactly that. Henry Schein had to do with... I think you're stretching what exactly that and directly on point means. We're talking about delegating questions of arbitrability to the arbitrator. Respectfully, Your Honor, that is not what this is about. This is a formation. This is about whether an agreement to arbitrate was formed. It is not about construing the scope of the agreement. But you conceded that an agreement to arbitrate was formed. Yes, Your Honor. And as I said at the outset, the issue here really before the court is if you form an agreement and that agreement includes an express termination, does it remain in effect past the express termination?  What is the scope of the agreement? What is the... How do we interpret the agreement? These are all questions that are yet to be determined. And your contract says that they're determined by an arbitrator. Or maybe it does. You haven't contested that it says that. Well, Your Honor, there is no duration dispute here, which is why some of the references to National Labor Board, National Railroad, excuse me, out of the D.C. Circuit were a little odd because that case says when you have a direct, a date certain expiration, that's when it expires. You don't have it. You can have disputes that go to arbitration about whether, you know, if it expires based on a contingent event like a deadlock in negotiations or whether an option in the Virginia Carolina Tools case, an option was exercised. When you have a date certain expiration, there is no dispute that the contract expired. We're not disputing, we're not interpreting anything to say that the contract expired. We're not interpreting the arbitration clause. We're simply saying the agreement was not in force to force arbitration of anything, not any particular claim, anything in 2006 or later. And the only way to get around that is to do exactly what happened in the reply brief and here in oral argument, which is to say that it is truly an eternal obligation to arbitrate. That 100 years from now, 1,000 years from now, they'll always be able to claim, even though the parties in writing agreed that that would not be the case, that agreement doesn't matter and we're going to say that it's eternal anyway. No other contractual provision operates that way. Certainly 100 years from now, they can't ask for money, we can't demand services. It's making this arbitration provision stand alone and unique, which is directly contradicted by the Supreme Court decision, Morgan v. Sundance, that we're supposed to be treating arbitration more or less than any other contractual provision. We're simply enforcing the agreement as written. We're not making special rules to try to force arbitration. I have a question, counsel. You have a contract and an issue comes up whether or not that contract is terminated. Is that scope of formation? Your Honor, what you just described is a duration dispute, which could be delegated. If you don't know if the contract has been terminated, if it's on a contingent event. Well, you don't know, they're fussing over it. The parties are saying, I think it's terminated. I don't think it is. My question to you, is that formation or is that scope? Your Honor, that duration dispute, you're arguing over whether you're construing the contract to determine. I agree. My question is, is that a scope question or a formation question if the issue is whether or not the contract is terminated? In that case, Your Honor, you have a factual dispute that you're arguing, has this contract been terminated? Which would be, is it no longer in effect? The formation question is, have you formed an agreement to arbitrate the disputes? Which is it? And in that pattern, you have a duration dispute, you have delegated to an arbitrator the dispute on whether have we formed this agreement at this time. You can do that. In this case, that's not. To answer my question, is scope in it? If you don't know whether the agreement has terminated. Well, you don't know or not. One part. Believe me, each side knows what the answer is, it's just a different answer. That's the difference is. But they're fighting over termination. That's the scope of it, isn't it? I mean, this, right? Your Honor, the reason that that's difficult is, you're talking about the scope of the arbitration agreement, which in this fact pattern, I believe is conceivable. Right now, I'm just talking about a contract that has been formed and the issue is now whether or not it is terminated. And I'm just asking you, is that a question of scope or the formation of the contract? And, Your Honor, the reason that that's difficult to answer in those terms is when we're using the word scope, we're talking about the scope of the arbitration provision. No, scope would be in terms of how, is timeline, does it cover this thing? Does it cover this time period? That's scope, right? Well, in that sense, if we say the scope of the language in the contract that has some sort of contingent, then yes, that'd be the scope of that. And aren't you arguing? Yes. Okay. Yes. Aren't you arguing here that that contract is terminated, that arbitration agreement is terminated and no longer in effect because the subsequent ones did not, didn't apply to it? Aren't you saying that it's no effect? No, Your Honor. The difference between your example in this case, you know, conceding in that example, we're talking about the scope of the language terminating the contract, which could be on some contingent event. Here, an authority would be the National Railroad case. When you have a date certain termination, there's no arguing about scope. And that's the authority for that proposition. Maybe the argument may be frivolous on the other side, but isn't it still a scope argument? Respectfully, Your Honor, it is not. And again, the authority for that proposition is National Railroad. When you have a date certain termination, there is no dispute on the termination date and arbitration provisions only apply to disputes. There's no dispute. It's not a scope question to know what, to read the calendar. Okay. Thank you. What difference does it make if this Lidl case was a labor case? Well, Your Honor, in the appellant's brief, issue was taken with that, and in our response brief in footnote 7, there was a long string cite of cases uniformly applying this in an arbitration context. In the reply brief, then there was a pivot to, well, those cases didn't have broad arbitration delegation provisions, and then a response to that is, again, we're talking about the formation of agreement to arbitrate the issues, not the breadth of the arbitration clause. We're saying that the arbitration clause, however broad it was, terminated with the agreement because the parties agreed that it did. Then moving to the, I guess would be a fallback argument about the relationship between the claims in this case and the 2002-2003 BSAs, you know, some issue was taken in a reply brief that about arises from significant relationship. In this case, I think it's conceded that that will get you to the same position. Did it arise from things happening in 2006 or later? Was it significantly related to things happening in 2006 or later? It gets you to the same point, and the answer, of course, is no. That's partly a factual question. It's also partly just a question of the pleadings because that's really what controls that. Nothing has, it's been affirmatively pled that everything happening in 2002-2003 was not actionable, period. That's actually pled, and then actionable things start happening in 2006. And just a very quick, you know, the overall fact pattern here that's been uncovered through discovery and trial is that in 2002-2003 you had an agreement under these BSAs where there's charged $100,000 a year in lieu of commissions on premiums. And then at 2004, when the 2003 agreement expired, that was abandoned, and there were no agreements because it was decided we'll just go to a straight commission, you know, on the premiums, no arbitration agreements. Then the district tried to abandon that, go to somebody else, HUB said, wait a minute, you can't do that, we'll overdo our commissions on these insurance policies, we're going to see you in court. And they hired a lawyer, threatened that, there was a settlement agreement saying all the prior obligations are resolved by this settlement agreement, any disputes about this settlement will be resolved in court. But you're not debarred from future business. Then the future business, you know, started happening in 2006, and that's when we had a personnel change from Ken Coffey, had by then been replaced by Brantley Thomas, who's now still in prison, started taking bribes. And that's when the actionable conduct began. It's separated by years from these agreements, which expired on their own terms, and it's not related to them in any way other than the identity of the parties. And the general subject matter of insurance, and that's it. So in conclusion, Your Honor, I would ask that the district courts, I believe, throw order on this matter after a year of discovery and a week-long trial be affirmed. I do not believe that there is, it would be extraordinary to hold that if you agree that you're going to terminate all your rights and obligations under an agreement, that years later one and only one obligation is enforceable, and that's an obligation to arbitrate anything that happens that was conceded 100 years hence, have to arbitrate it. No other right or obligation survives a termination, but that one does, even though everyone said that it would expire. And I would, there was a note in the reply brief saying that Coinbase wasn't on point, and I do think it has some relevance here. I would assume it would at least be conceded that if a separate agreement were formed that called out that clause and said we also terminate this clause and aren't going to arbitrate anything happening after this date. Looking at Coinbase, I believe that would have to be an enforceable agreement, but that's exactly what happened here, only it's in the BSA itself and not a separate follow-on agreement. Which again follows the pattern of the cases that have come out of the Supreme Court recently, which have been to instruct courts that these provisions are meant to stand, I mean, enforced like any other contractual provision, not to make special rules one way or the other. That's what Henry Schein was about, was making up a special rule. There have been cases, you know, with the waiver arguments, for example, that there's not a special rule about that. Enforced like every other agreement. No other part of any agreement survives its agreed termination in the way that HUBS says that this arbitration provision will survive until, I mean, it sounds like I'm being facetious, but it's been conceded until the end of time. Until the end of time, no matter what the parties actually agreed to, they cannot go away. The zombie word was actually used by the district court to describe that argument. That is not the law. We have a Supreme Court case that is directly on point about how do you determine whether claims asserted after the termination of an agreement are subject to the arbitration provisions of an earlier agreement. We have a case that says that, and the rule is straightforward. If it arises from fact, I mean, the exact wording is involves facts or circumstances that arose, that's the quote, during the agreement. That is not the case here. The district court found that it's not the case here. And so there's no basis to use those agreements to force arbitration of claims from conduct occurring years later, ironically, with an intervening threat of judicial, you know, relief from HUB about a dispute. If the court has no other questions, again, I ask that the district court's opinion be affirmed. Thank you. Thank you very much, sir. Mr. Patella? Thank you. I'd like to address just a few things, but I'd like to keep it brief. First of all, counsel said that there is a case that's directly on point. He was referring to Litton that says how, you know, what the analysis is supposed to be for determining, you know, when a dispute that's raised after an arbitration agreement expires, when does it relate back to the contract? And I agree, Litton addresses that issue and says you look back at the time, you know, are the allegations that form the dispute, do they relate back to the time while the agreement was in effect? The problem with the district's argument is that is a question of scope. That is a question that is reserved for the arbitrators here. The arbitrator will hear every single argument that the school district wishes to make about why its claims, about why the allegations in its complaint do not, in fact, relate back to those agreements. And perhaps the arbitrator will agree with them. We believe it will agree with HUB. But the fact is, under Henry Schein, we have a delegation provision, and that means that according to the Supreme Court's words, courts have no power to address that issue. That doesn't mean the issue doesn't get addressed. That doesn't mean they don't get a day to present their argument. The problem is, having conceded that there are valid and enforceable arbitration agreements, that's a question that is delegated to the arbitrators here. I would also like to briefly address some of the mentions of, some of the discussion of Litton, because it was said that Litton is a case that held very clearly that this is a formation question. Litton dealt extensively with what happens when arbitration agreements expire. Not once does it remotely suggest that this is an issue of contract formation that courts decide. The word formation appears nowhere in that decision. And if you actually read the decision, once the court goes from stating its general principles to applying it here, it says this is a question of arbitrability. We are turning to a question of arbitrability, which means that's a question of scope. And briefly, just one more point, counsel also said that when there's a date certain, somehow this becomes a, that it would expire on a date certain, you know, somehow that becomes a formation question. Obviously, that doesn't make sense as a matter of logic. They've agreed that there was a formed agreement based on a constructive ratification theory. When you form an agreement, it expires. That doesn't mean it was somehow never formed in the first place. And the fact that there was a date certain doesn't change the analysis, because if you look in Litton itself, Litton said the parties agreed that it would expire on a specific date, October 3rd, 1979. But that didn't end the analysis. The fact is, and counsel again said, it seems unfathomable that one provision could survive, you know, just this arbitration requirement could survive the expiration. Again, that is Litton. Litton says there is a presumption of post-expiration arbitrability. And the dividing line there is, you know, what, and we're not saying that we have an obligation to arbitrate any and all questions, any and all disputes that might arise in the future. We don't believe that's true, and it would, you know, we would never assert that, you know, in some of their, you know, some of their hypothetical examples. But Litton says that the arbitration agreement does survive the expiration, even whereas in that case the agreement itself expired on a date certain. There's a presumption that if it relates back to that time, that dispute resolution provision survives the expiration of the agreement. And here, whether or not their claim in fact relates to the arbitration provision that survived is a question of scope that's reserved for the arbitrators here. So if there are no more questions for me, we would respectfully request that the court reverse and remand to the district court with instructions to send this case to the arbitrator where the arbitrator may resolve any disputes about the arbitrability of the district's claims. Thank you. Thank you very much, sir. And we'll take the case under advisement.
judges: Robert B. King, Roger L. Gregory, Allison J. Rushing